United States District Court
Southern District of Texas
**ENTERED**
August 16, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Vernetta Nicole Rice, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-23-2530 |
| | § | |
| Martin O'Malley, | § | |
| Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Vernetta Nicole Rice appeals the Social Security Administration Commissioner's final decision denying her application for Social Security benefits. ECF No. 1. Pending before the court is Plaintiff's Motion for Summary Judgment, ECF No. 11. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF Nos. 4–6. The motion for summary judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.[1]

### 1. *Procedural Posture*

Rice applied for social security benefits under Titles II and XVI of the Social Security Act on June 8, 2021. Tr. 81, 91, 101, 111. Rice alleged a disability onset date of October 20, 2020, due to anemia, chronic blood loss, blood transfusions, migraines, heart murmur, hernia, high blood pressure, excessive menstrual

---

[1] While the Commissioner's response to Rice's Motion for Summary Judgment, ECF No. 16, is not styled as an affirmative motion for summary judgment, the Commissioner does seek in the body of the motion to have his decision affirmed and the case dismissed with prejudice. *Id.* at 8. The court grants that relief.

bleeding, depression, and anxiety. Tr. 82, 92, 102, 112. The SSA denied Rice's applications initially on January 6, 2022, and upon reconsideration on August 3, 2022. Tr. 81, 91, 101, 111.

At Rice's request, Administrative Law Judge (ALJ) Thomas Helget held a telephonic hearing on November 30, 2022. Tr. 35–63 (hearing transcript). At the hearing, Rice and a vocational expert (VE) testified. Tr. 36. Rice's counsel was present and examined the witnesses. Tr. 37, 51, 60.

Rice testified that she attended school through the tenth grade and previously worked as a restaurant cook and cashier. Tr. 39–40. Rice testified that she had difficulty walking, "kept falling out at work," and was "in and out of hospitals." Tr. 42. She testified that she had low iron, required blood transfusions twice per month, and had problems with her knees, legs, and hips. Tr. 42–43. Rice testified that she experienced pain when she walked too long, walked with a limp, and required physical therapy. Tr. 42. She stated that she experienced pain in her neck and lower back and that she had headaches "all the time." Tr. 45.

The ALJ questioned Rice about her bipolar disorder, depression, anxiety, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), and mood disorder. Tr. 46. Rice testified that, two or three days per week, she did not want to get up or interact with others. *Id.* She testified that her employer would not call her into work because of her mood and that she "d[idn't] really like dealing with people because of [her] moods." Tr. 47.

Rice stated that she tried to watch television or play games during the day but slept most of the time because of her medication. Tr. 47, 55. She stated that she had difficulty concentrating when watching television and that she struggled to read because of her poor vision. *Id.* She stated that her vision

2

became blurry or black when she is in the sunlight. Tr. 48. She testified that she did not visit friends or engage in hobbies. Tr. 55.

Rice testified that she did not shop for groceries because she did not like being around people. Tr. 50. She could not walk much and relied on a friend to drive her. Tr. 49. She did not cook or clean around the house. Tr. 50. Rice testified that she had help with maintaining her hygiene and personal care, including bathing and dressing herself. Tr. 55–56.

Rice testified that she could sit for twenty to thirty minutes before experiencing hip pain and swelling in her knees and ankles. Tr. 51. Changing position relieved her pain. *Id.* She stated she could stand for approximately fifteen minutes and could walk a distance of fifty feet. *Id.* She could not climb stairs, stoop, crouch, kneel, or squat. Tr. 52. She had difficulty bending down "because of [her] back." *Id.* She could not lift "anything that's heavy." *Id.*

Rice testified that her memory was "in and out" and that she had to write everything down and get help with reminders to attend her medical appointments. Tr. 53. She stated that she could not concentrate long enough to complete tasks. *Id.* She stated that she could not maintain a full-time job because of her memory problems, difficulty concentrating, and difficulty "being out in public." Tr. 54. Rice stated that she experienced panic attacks "almost daily." *Id.*

The VE testified that Rice's past employment as a fast-food worker was an unskilled job performed at the light exertional level. Tr. 42. The ALJ asked the VE to consider a person of Rice's age, education, and vocational history with various functional limitations that the ALJ ultimately recognized in his decision. Tr. 57–59. The VE opined that such a person could not perform Rice's past work but could perform other work such as collator operator, photocopy machine operator, or advertising material distributor. *Id.*

3

The ALJ issued his decision on January 31, 2023, finding that Rice was not disabled from October 20, 2020, through the decision date. Tr. 15. Rice requested review of the ALJ's decision, which the Appeals Council denied on May 12, 2023. Tr. 1. Rice timely filed a complaint in federal court on July 11, 2023. ECF No. 1.

## 2. *Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Both programs use the same standard to evaluate an applicant claiming disability. *See* 20 C.F.R §§ 404.1520, 416.920 (2021). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal

4

standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision but may not reweigh the evidence or substitute its judgment. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). A party's brief "must support assertions of fact by citations to particular parts of the record." Fed. R. Civ. P. Supp. Soc. Sec. 5.

### 3. Analysis

#### A. Step One

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2021). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2021).

The ALJ found that Rice had not engaged in substantial gainful activity since October 20, 2020, the alleged onset date. Tr. 17. This finding is not in dispute.

#### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and

5

has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2021) (citing 20 C.F.R. § 404.1509); 20 C.F.R. § 416.920(a)(4)(ii) (2021) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c) (2021). "[A]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c) (2021).

The ALJ found that Rice had severe impairments of obesity, anemia, degenerative disc disease of the cervical spine, osteoarthritis, aneurysm, vision loss, migraines, major depression, anxiety, PTSD, ADHD, bipolar disorder, mood disorder, and polysubstance abuse. Tr. 17. The ALJ found that Rice's impairments of gallstones, hernia, hypertension, diastasis recti, cellulitis, pre-diabetes mellitus, dysphagia, onychomycosis, glossitis, back pain, lumbago, COVID-19, and arthralgia of the right leg were non-severe because they were managed with routine treatment or medication and the record contained no evidence of functional limitations resulting from those impairments. *Id.* These findings are not in dispute.

### C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2021); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1 (2021). The Listing describes

impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a) (2021). If all the criteria of a Listing section are met or equaled, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2021); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals the specified medical criteria. *Id.*

The ALJ found that Rice did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing. Tr. 18–20. The ALJ specifically considered Listing sections 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.18 (abnormality of a major joint in any extremity), 2.00 (disorders relating to special senses and speech), 11.02 (epilepsy), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma- and stressor-related disorders). *Id.*

The ALJ considered the paragraph B criteria, which evaluate mental functioning in four broad areas used in a work setting. Listing § 12.00(A)(2)(b) (2021). To meet the paragraph B criteria, a claimant's disorder must result in an "extreme" limitation in one, or a "marked" limitation in two, of the four areas of mental functioning. *Id.* § 12.00(F)(2) (2021). The ALJ found that Rice had only moderate limitations in each of the four functional areas detailed below. Tr. 19–20.

The ALJ determined that Rice had a moderate limitation in understanding, remembering, or applying information because she testified that she had poor memory, had to write everything down, and could not maintain a regular schedule due to memory problems. Upon mental examination, Rice could recall five numbers forwards and three numbers backwards but could not

7

recall any of three objects after five minutes. Tr. 19 (citing Rice's hearing testimony and Tr. 1130).

The ALJ determined that Rice had a moderate limitation in interacting with others because she testified that she could interact with her children but did not have friends and did not shop for groceries or attend her children's basketball games because she did not like crowds. Tr. 19 (citing Rice's hearing testimony).

The ALJ determined that Rice had a moderate limitation in concentrating, persisting, or maintaining pace because she testified that she could not concentrate long enough to complete any tasks and could not maintain a regular schedule due to her memory problems. Tr. 20 (citing Rice's hearing testimony).

The ALJ determined that Rice had a moderate limitation in adapting or managing oneself because her mental status examination revealed that her insight was "impaired" and her judgment was "fair." Tr. 20 (citing Tr. 1130).

Because Rice did not have at least two "marked" limitations or one "extreme" limitation, the ALJ determined that she did not satisfy the paragraph B criteria. Tr. 20. The ALJ determined that Rice likewise did not satisfy the paragraph C criteria, which requires evidence of impairments over a period of two years with evidence of ongoing medical treatment that diminishes the mental disorder's symptoms plus marginal adjustment. *Id.*; *see also* Listing §§ 12.00(G)(2)(b)–(c) (2021) (setting forth the paragraph C criteria).

The ALJ's step three findings are not in dispute, and the ALJ did not err.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e) (2021) (citing 20 C.F.R. § 404.1545); 20 C.F.R. § 416.920(e) (2021) (citing 20 C.F.R. § 416.945). The RFC is a

8

determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 4 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1) (2021). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 404.1520(e); 416.920(e) (2021); *see also* 20 C.F.R. § 416.945(a)(1) (2021); *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c) (2021); *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ.").

The ALJ determined that Rice had the RFC to perform work at the light exertional level with the following limitations:

> [She] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. [She] can never climb ropes, ladders, or scaffolding. [She] is limited to frequent near and far acuity and depth perception. [She] cannot work at unprotected heights, dangerous moving machinery, or hazards. [She] cannot drive in the workplace. [She] is limited to simple, routine, repetitive tasks, requiring no more than 1, 2 or 3 step instructions, not performed in a production rate environment, and having to deal with only occasional changes in a routine work setting. [She] is limited to occasional interaction with supervisors and coworkers. [She] must avoid all interaction with [the] public.

Tr. 20.

In reaching this RFC finding, the ALJ considered the entire record, including Rice's hearing testimony and the medical records. Tr. 20–27 (discussing and citing to Rice's hearing testimony and medical records). The ALJ compared Rice's allegations regarding her daily activities and limitations to the

9

record medical evidence and determined that, although Rice's impairments could reasonably be expected to cause her alleged symptoms, Rice's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical and other evidence in the record. Tr. 22, 26.

For example, Rice testified to having poor concentration and memory problems. Tr. 53–54. She also reported to mental health providers in November 2022 that her concentration "[was] all over the place." Tr. 1316. However, upon mental status examination, Rice exhibited "good" attention span and concentration and "intact" memory. Tr. 1318. Her thought process was "logical," she was oriented, and she exhibited "fair" insight and judgment. *Id.*; *see also, e.g.*, Tr. 1340, 1368.

Rice testified to having exertional limitations due to back pain, problems with her knees, legs, and hips, weakness in her arms, and difficulty walking. Tr. 42–43, 45, 52. Some medical records document Rice's abnormal gait, decreased sensation in her extremities, and weakness, *see, e.g.*, Tr. 347, 355, 404, 867, 872, 1156, but others document a "normal" gait, posture, muscle strength, and range of motion. *See, e.g.*, Tr. 990, 991, 1027, 1243, 1253, 1318, 1329, 1340, 1368. Medical records also reflect that Rice was often non-compliant with medications and follow-up care. *See, e.g.*, Tr. 675, 1322, 1349, 1350, 1404.

The ALJ also considered the medical opinions and prior administrative medical findings in the record. The state agency medical consultants opined that Rice was limited to work at the light exertional level, but the ALJ found this opinion to be unpersuasive because the record supported additional postural and visual limitations not adequately addressed by the consultants. Tr. 26. For example, the consultants determined that Rice did not have visual or postural limitations, Tr. 87, 97, 107, 117, but the ALJ observed that medical evidence documented

Rice's subjective reports of vision problems and an aneurysm. Tr. 26. Accordingly, the ALJ incorporated additional non-exertional and visual limitations into the RFC.

The state agency psychological consultants opined that Rice had the mental RFC to maintain adequate social functioning in a work setting that limited contact with the public. *See, e.g.*, Tr. 89, 99. The ALJ found this opinion to be "generally persuasive" because it was consistent with the psychiatric findings throughout the record, but based on Rice's hearing testimony, the ALJ further limited Rice's interaction with the public to "none" and determined that she could not perform work in a production rate environment. Tr. 26.

The ALJ's RFC is supported by substantial evidence and complies with the regulatory framework.

Rice argues that the ALJ erred in determining the RFC because he "erroneously failed to evaluate Dr. Hall's consulting opinion or articulate the persuasiveness of that opinion pursuant to the required regulatory factors." ECF No. 11-1 at 12. The court disagrees.

The SSA "evaluates evidence . . . according to the rules pertaining to the relevant category of evidence." 20 C.F.R. §§ 404.1513(a), 416.913(a) (2021). The categories of evidence include, among others, "medical opinion[s]" and "other medical evidence." *Id.* "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions" in her abilities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2021). The relevant abilities include "perform[ing] mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a

11

work setting[.]" *Id.* §§ 404.1513(a)(2)(i)(B), 416.913(a)(2)(i)(B). On the other hand, "Other medical evidence is evidence from a medical source that is not . . . a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3) (2021).

The ALJ is required to consider medical opinions using factors such as supportability, consistency, length of the treatment relationship, and purpose of the treatment relationship. 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c) (2021). Because the regulations state that a medical opinion's supportability and consistency are the most important factors when considering its persuasiveness, the ALJ is required to explain how he considered those factors in evaluating prior medical opinions in the record. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, Barbara Hall, Ph.D., conducted a psychological consultative examination of Rice in December 2021. Tr. 1127–30. Hall's report following the examination documents Rice's past history, her mental status during the examination, and her diagnoses and prognosis. *Id.* Among other things, Hall documented that Rice was "cooperative," her thinking was "loose," and that her mood was "depressed." Tr. 1129. Rice's judgment appeared to be "fair" and her insight "impaired." Tr. 1130. Hall documented Rice's performance on memory examinations, stating that Rice "was able to recall 5 numbers forwards and 3 numbers backwards. She was not able to remember any of 3 objects after 5 minutes." Tr. 1130. As to concentration, Rice documented that Rice "refused both serial 3's and calculations" and, in the diagnosis section, stated that Rice had "diminished ability to concentrate." *Id.* Hall stated that Rice's "[p]rognosis may be improved with psychotherapy." *Id.*

Hall's report is not a "medical opinion." Although Hall's report arguably discusses Rice having impairment-related restrictions in her mental abilities by documenting Rice's "diminished ability to concentrate," the report does not opine on what Rice "can still do despite [her] impairment(s)." *Cf.* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2021) (defining "medical opinion"). Instead, the report only documents "judgments about the nature and severity of [Rice's] impairments, [her] medical history, clinical findings, diagnosis . . . or prognosis." *Cf.* §§ 404.1513(a)(3), 416.913(a)(3) (defining "other medical evidence"). Therefore, Hall's report does not contain any medical opinions, as that term is defined by the regulations, and the ALJ was not required to evaluate the persuasiveness of Hall's report according to the regulatory factors set forth in §§ 404.1520c(a)–(c), 416.920c(a)–(c). The ALJ did not err.

Moreover, any error is harmless. Rice does not argue that further consideration of Hall's report would have resulted in a different RFC. Also, the state agency consultants, whose opinions the ALJ did evaluate, both considered Hall's report in opining on Rice's RFC. Tr. 104, 113, 115.

### *E. Step Four*

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2021); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2021). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) (2021).

Based on the VE's hearing testimony and the social limitations recognized in the RFC, the ALJ determined that Rice could not perform her past work as actually or generally

13

performed. Tr. 27. This finding is supported by substantial evidence and is not in dispute.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 416.920(a)(4)(v) (2021). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g)(1) (2021).

The ALJ found that Rice could perform jobs that exist in significant numbers in the national economy. Tr. 27–28. The ALJ relied on the VE's testimony that an individual of Rice's age, education, work experience, and RFC would be able to work as a collator operator, photocopy machine operator, and advertising material distributor. *Id.* at 28; *see also* Tr. 57–58 (VE's relevant testimony).

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and Rice's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's findings at step five are supported by substantial evidence.

### 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence.

There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, Rice's Motion for Summary Judgment, ECF No. 11, is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

Signed at Houston, Texas on August  16 , 2024.

_____
Peter Bray
United States Magistrate Judge